FILED

2016 Sep-30  PM 07:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| CARRIE M. HETZEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  7:14-cv-00292-SGC |
| | ) | |
| BIBB COUNTY, ALABAMA BOARD OF EDUCATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Carrie M. Hetzel ("Plaintiff" or "Hetzel") brings this action against the Bibb County, Alabama Board of Education ("Defendant" or the "Board"), alleging the Board discriminated and later retaliated against her in its hiring decisions. (Doc. 1). Hetzel claims the actions of the Board constitute violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* (as amended) ("ADA"), and the Age Discrimination in Employment Act (as amended), partially codified at 29 U.S.C. § 621 *et seq.* ("ADEA").  (*Id.* at 5-8).

Plaintiff contends she was discriminated against on the basis of her disability in violation of the ADA, when she applied for two positions she was qualified to hold but was passed over in favor of less qualified candidates who were not disabled. (Doc. 1 at ¶¶ 26-31). She also claims the same conduct constituted discrimination against her on the basis of her age in violation of the ADEA. (Doc. 1 at ¶¶ 37-41). Hetzel claims she was discriminated against on the basis of her gender in violation of Title VII, when the Assistant Principal position at Brent Elementary was

awarded to a lesser qualified male. (Doc. 1 at ¶¶ 32-36).[1] Finally, she asserts a claim for "retaliatory discrimination in violation of federal law." (Doc. 1 at ¶¶ 42-47). The basis for her retaliation claim is the Board's failure to hire her as an Assistant Principal at West Blocton High School (Doc. 1 at ¶ 45); its failure to hire her as Assistant Principal at Bibb County High School (*Id.*; Doc. 16 at 22); and its failure to appoint her as an interim special education coordinator at Bibb County High School. (Doc. 1 at ¶ 45). Plaintiff also claims retaliation on the basis of a hostile work environment at Brent Elementary. (*Id.* at ¶ 46).

The Board has moved for summary judgment on the grounds that it has not discriminated or retaliated against Hetzel and she has failed to proffer sufficient evidence to meet her burden of proof. (Doc. 15). The motion is fully briefed and ripe for review. (*See* Docs. 15, 16, and 17). This court has jurisdiction under 28 U.S.C. § 636(c), 1331, and 1367.[2]

For the reasons stated below, the Board's motion for summary judgment will be **GRANTED**.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the *Federal Rules of Civil Procedure*, summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] Plaintiff asserts a Title VII violation for discrimination on the basis of her gender but not on the basis of any other classification.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 20).

The party moving for summary judgment always bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323.

Once the moving party has met its burden, then the non-moving party must "go beyond the pleadings" and point to specific facts in the record to show there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (citation omitted). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249). The court must "examine the evidence in the light most favorable to the non-moving party," drawing all inferences in favor of such party. *Earl Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence.). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation omitted).

## III.   RELEVANT FACTUAL BACKGROUND

Plaintiff is a female over the age of forty who is employed by the Bibb County, Alabama Board of Education. (Doc. 1 at ¶ 8). Hetzel is dyslexic. (Doc. 1 at ¶ 5). But there is a dispute,

discussed below, as to whether this was known to the Board or any of its other employees during the timeframe in question.

Plaintiff is certified as a K-12 teacher in reading and in special education. (Doc. 1 at ¶ 5). She has worked for the Board since 1998. (*Id.* at ¶ 6). She has spent most of that time as a special education teacher at the K-4 level. (Doc. 16-1 at 26). For the last several years, however, she has worked at Bibb County High School. (*Id.*). In addition to being an experienced special education teacher, she has helped to administer Bibb County's after school program, the Centreville After School Team ("CAST"). (Doc. 1 at ¶¶ 10-11). Her responsibilities at CAST included budgeting and management, as well as seeking grant funding, which she did successfully. (*Id.* at ¶¶ 12-13).

When the events giving rise to this litigation began, Hetzel taught special education at Brent Elementary. (Doc. 16-1 at 22). Between July 2012 and June 2014, Hetzel applied for four positions with the Board which were ultimately filled by other applicants. (Doc. 16-5 at 16-17).

### A. Brent Elementary

In the 2011-2012 school year, Brent Elementary School Assistant Principal Jay Austin was transferred to Bibb County High School (Doc. 15-1 at 8), leaving an opening for an Assistant Principal at Brent Elementary. Dr. Mechelle Hollifield, the Principal at Brent Elementary, chose to split the position into two part-time Assistant Principal positions. (Doc. 15-3 at 92). Hollifield conducted the interviews of the applicants, including Hetzel and Jason Leach, who was a third grade teacher at the time he applied to be Assistant Principal. (*Id.* at 92, 94). After reviewing the applicants, Hollifield determined no single applicant would have been satisfactory as a full-time Assistant Principal, so she sought and received approval from the Board to split the position into two part-time positions. (*Id.* at 92). After posting and reviewing

applicants for the two positions, Hetzel and Leach were selected as the Brent Elementary Assistant Principals. (*Id.*). Hetzel claims the treatment of the two was unequal from the time they were hired. (Doc. 16 at ¶ 18). She testified that she was given a former storage closet as an office, while Leach was given the Assistant Principal's office, and that while he had a nameplate, she never received one. (Doc. 16-1 at 24-25). The Board contends Hetzel was not treated unequally, the offices were substantially the same size, and they ordered Hetzel a nameplate that was illegible when it arrived so they had to order another one, which did eventually arrive. (*Id.*); (Doc. 15-3 at 97-98). The Board also notes a new desk was purchased for Hetzel's office because there had not been one in it before she moved in. (Doc. 15-3 at 97).

At the end of the 2011-2012 school year, Hollifield sought and received permission to review the decision to split the Assistant Principal position. The Superintendent, Greg Blake, testified he had heard complaints from parents about the split position and he instructed her to consider that in deciding how to proceed. (Doc. 15-6 at 9-10). Hollifield chose to conduct a survey of the faculty, something she had not done in the previous round of decisions about this same position. (Doc. 15-3 at 87). Hollifield testified she was instructed to complete the survey by Blake, but Blake denies having been aware of the survey or its contents before its results were revealed. (Doc. 15-3 at 87; Doc. 15-6 at 9-10). The faculty survey, which was anonymous, revealed that the faculty and staff who responded overwhelmingly favored consolidating the position. (Doc. 16-9). Several indicated a preference for Leach. (*Id.*). Some made comments about needing a "male role model" or otherwise stated a preference; the parties disagree about whether this information was dispositive in Hollifield's decision. (*Id.*). Hollifield sought permission to consolidate the positions, which was granted, and after a round of interviews she recommended Leach be hired as Assistant Principal, which he was. (Doc. 15 at ¶¶ 48-55).

Hetzel asserts she suffered various forms of retaliation at Brent following Leach's hiring as full-time Assistant Principal, chief among which was that she was stripped of committee positions. (Doc. 16 at ¶ 49). But she acknowledges she was reinstated to certain committees and other responsibilities (*Id.*); the parties dispute the reasons for this.

### B.  First EEOC Charge

At some point in the summer after the 2011-2012 school year, Hetzel discussed her career options with Dr. James Gray (Doc. 16 at ¶¶ 45-48), whom she describes as a "board-level employee." (*Id.* at p. 26). Hetzel discussed with Gray the possibility that she would file a lawsuit or a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*). She later claimed to have also discussed this possibility with another Board employee, Dr. Alesha Judd.  (Doc. 16 at 28).

On December 20, 2012, Plaintiff filed a charge of discrimination with the EEOC. (Doc. 1-1). She charged discrimination on the basis of her sex, age, and disability. This complaint was based on the fact that she "applied and was qualified for the position of Assistant Principal with Brent Elementary School, but the position was given to a lesser qualified, younger male, who does not have a disability." (*Id.*). Hetzel would later file a second charge of discrimination with the EEOC in July 2013, discussed below.

### C.  West Blocton High School & Second EEOC Charge

In June 2013, Hetzel applied to be Assistant Principal of West Blocton High School. (Doc. 1 at ¶ 25). The job posting listed a Master's degree and "valid certification in teaching and school administration," as well as "[v]erified proof of three (3) years' successful experience as a teacher" among the minimum requirements for the position. (Doc. 15-2 at 16-17). Principal Lawley conducted the hiring process for the Board and consulted with Superintendent Gray.  For

funding reasons, the two agreed Lawley would need to hire someone who could teach at the high school level in addition to serving as Assistant Principal. (*Id.* at 13). To make sure whoever was hired would be ready to teach at the high school, Lawley only considered candidates who had secondary teaching experience, notwithstanding the broader "minimum requirements" of the job posting published by the Board. (*Id.* at 13-14).

The Board hired David Steele, a younger male without a disability, instead of Hetzel on July 1, 2013. (Doc. 15-2). Following the decision to hire Steele, Plaintiff filed a second charge of discrimination against the Board in July 2013. (Doc. 1-3). In addition to charging discrimination in its decision to hire Steele, Hetzel complained the Board's decision to hire Steele over Hetzel was in retaliation for her threat (made to Gray and Judd) of filing the first EEOC charge. (*Id.*). Both EEOC charges were dismissed on November 25, 2013, and Plaintiff was given notice of her right to sue. (Docs. 1-2, 1-4).

### D.  Bibb County High School

After the dismissal of her EEOC charges, Plaintiff applied for two positions at Bibb County High School. In December 2013, a woman named Evon Blake was appointed Interim Special Education Coordinator at Bibb County High School. (Doc. 15-6 at 61). Following the 2013-2014 school year, the Board posted conducted a search for a permanent Special Education Coordinator at Bibb County High School. Plaintiff applied for the permanent position but it was awarded to Evon Blake. (*Id.*).

Next, Plaintiff applied to be Assistant Principal of Bibb County High School in the Summer of 2014. (Doc. 15-6 at 72, 77). Hetzel was interviewed but was not selected; a man named John Hooper was hired instead. (*Id.*).

Plaintiff states a claim for retaliation in the Board's failure to hire her as Principal at Bibb County High School following her EEOC complaints. (Doc. 1 at ¶ 45). But there is no evidence in the record whatsoever that Hetzel ever applied to be Principal at Bibb County High School. Jay Alston was hired as Principal of Bibb County High School in 2012 after serving as a "turnaround specialist" for a year while the previous Principal was on administrative leave. (Doc. 15-6 at 38).  He still held that position at the time this case was filed.  (*Id.*).

## IV.   DISCUSSION

Hetzel claims the Board discriminated against her on the basis of her gender, age, and disability and that it retaliated against her when she engaged in the protected activity of attempting to assert her civil rights by charging discrimination with the EEOC. (Docs. 1, 16). She bears the ultimate burden of proving her claims of discrimination. *See, e.g., Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) ("[T]he ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff.") (citation omitted); *Walker v. Nations Bank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).

Hetzel may avoid summary judgment in one of two ways. She may rely on the traditional framework and use direct evidence to create a triable issue on whether she was fired or treated less favorably based on impermissible discrimination. See *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Cir. 2005) (per curiam). Alternatively, Hetzel may use circumstantial evidence and rely on the "*McDonnell Douglas*" framework to create a triable issue. *Id.*; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[3]

---

[3] The *McDonnell Douglas* burden-shifting framework applies to ADA and ADEA employment discrimination cases, as well as to cases brought under Title VII. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (framework applies to ADA

### A. Discrimination

#### 1. Direct evidence

The Eleventh Circuit defines direct evidence in the employment context as, "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Kilpatrick v. Tyson Foods, Inc.*, 268 Fed. Appx. 860, 861–862 (11th Cir. 2008) (internal citations and quotations omitted). Under this definition "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a protected classification, constitute direct evidence." *Id*. To qualify, such direct evidence must reflect "'a discriminatory ... attitude correlating to the discrimination ... complained of by the employee,' and must indicate that the adverse employment decision was motivated by the decision-maker's intent to discriminate." *Lawson v. Plantation General Hospital*, 704 F. Supp. 2d 1254, 1267, n.9 (S.D. Fla.2010) (internal citations and quotations omitted); *see also Jones v. Bessemer*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (noting that the 11th Circuit has severely limited what statements constitute direct evidence) (citing *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir.1997)). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Plaintiff cites no direct evidence of discrimination. (*See* Doc. 16 at 20-21). Defendant made note of this in its briefing. (Doc. 15-7 at 16) ("In the case at bar, Plaintiff's claim is based on circumstantial evidence, as no direct evidence of discrimination exists."). Plaintiff does not address this argument and has not described any evidence as being direct. Her arguments go directly to addressing the elements of the burden-shifting framework (described below) which

---

case); *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) (framework applies to ADEA case).

courts apply to circumstantial evidence. (Doc. 16 at 20-30).  The court sees no direct evidence of discrimination or retaliation, and therefore the analysis will proceed to considering the circumstantial evidence.

### 2.   The *McDonnell-Douglas* burden-shifting framework

With no direct evidence of discrimination, Hetzel must rely on circumstantial evidence to establish her claim, employing the burden-shifting framework established by *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). This requires a plaintiff to first establish a prima facie case of discrimination by showing "(1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) the position was filled by an individual outside the protected class." (*Holmes v. Alabama Bd. Of Pardons & Paroles*, 591 Fed. Appx. 737, 742 (11th Cir. 2014) (citing *Walker v. Mortham*, 158 F.3d 1177, 1186, 1193 (11th Cir. 1998). If Hetzel establishes a *prima facie* case, the burden shifts to her employer "to articulate a legitimate, non-discriminatory reason for the promotion decision." *Id.* (citing *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013)). Because the Board must only produce, not prove, a non-discriminatory reason for its action, the Board's burden is "exceedingly light." *Nations Bank*, 53 F.3d at 1556. Once the employer meets its burden of production, the burden shifts back to the plaintiff to show the employer's proffered reason is just pretext for discrimination. *Holmes*, 591 Fed. Appx. at 742 (citing *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007)).

### a.  Brent Elementary

#### i.  Prima facie case

For purposes of summary judgment, the court finds Plaintiff has stated a prima facie case with regard to her claims of disability, age, and gender discrimination in the hiring process for a full-time Assistant Principal at Brent Elementary.

Plaintiff claims she was discriminated against by the Board when a younger, lesser qualified male without a disability was hired instead of her to fill the Assistant Principal position at Brent. (Doc. 1 at ¶¶ 37-41). Jason Leach is a male with no disability who was thirty-eight years old at the time of these events. (Doc. 16-1 at 22). Hetzel is a woman over the age of forty, who claims she has dyslexia. (*Id.*). The Board concedes she is able to make a prima facie case as to her claims based on age and gender. (Doc. 15-7 at 19). But the parties dispute whether she has met her burden with respect to disability.

The ADA states that, with respect to an individual, disability means "(A) a physical or mental impairment that substantially limits one or more major life activities of such [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment...." 42 U.S.C. § 12102(1). A mental impairment is defined, in part, as "[a]ny mental or psychological disorder . . . and specific learning disabilities . . . ." 29 C.F.R. § 1630.2(h)(2). Reading, among other things, is a "major life activity" under the ADA. *See* 42 U.S.C. § 12102(2)(A).

Plaintiff argues she needs nothing more than her own assertion that her disability was substantial. (Doc. 16 at 21). She accurately quotes Supreme Court precedent as follows: "[T]he ADA requires those 'claiming the Act's protection … to prove a disability by offering evidence that the extent of the limitation … in terms of their own experience … is substantial.'" (*Id.*)

(quoting *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002)

(quoting *Albertson's, Inc.*, *v. Kirkingburg*, 527 U.S. 555, 567 (1999)).

These cases were overruled and superseded by statute upon passage of the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 ("ADAAA"), such that disability is intended to be read much more broadly than it was before the statute was passed. With the passage of the ADAAA, Congress specifically removed the stringent standards previously used to determine whether an individual was a "qualified individual with a disability." The new regulations state:

> The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA.

29 C.F.R. § 1630.1(c)(4).

The court finds, for purposes of summary judgment, that Hetzel has created an issue of material fact as to whether she is dyslexic. Although her self-serving testimony in this regard is completely uncorroborated by any other evidence in the record, the court is not permitted at this stage to make any credibility determination as to Hetzel's claim. *See Reid v. Secretary, Florida Dep't of Corrections*, 486 Fed. Appx. 848, 852 (11th Cir. 2012) (self-serving statements, though unsupported by medical record, were nevertheless sufficient to create a conflict in the evidence sufficient to withstand summary judgment).

For the foregoing reasons, Plaintiff has established a prima facie case as to her claims of discrimination in the hiring of an Assistant Principal at Brent Elementary.

### ii.  Defendant's stated reasons for its decisions

Hollifield stated the following reasons for her recommendation to the Board that it hire

Leach as Assistant Principal at Brent Elementary:

> In arriving at my decision to recommend Jason Leach over Carrie
> Hetzel, I considered the results of my [evaluation summary report]
> of each, the results of the [annual] performance surveys of the
> faculty and staff at Brent Elementary School, the daily
> observations of each while they were performing  assistant
> principal duties in the prior 2011-2012 school year, and the general
> consensus from the [position-specific] teacher/staff surveys that
> Jason Leach was the preferred person for the full-time job. One
> thing I did not consider from these surveys was the occasional
> reference to the school needing a male figure in the assistant
> principal position. The bottom line reason for my decision was
> that Jason Leach demonstrated better leadership skills, including
> his ability to manage situations with parents, students behaviors
> and staff problems. The results from the first 5-6 months of this
> 2012-2013 school year have reconfirmed that my decision was
> correct.

(Doc. 15-2 at 8). Plaintiff complains that the survey responses upon which Hollifield relied are

subjective and are self-reported without oversight. (Doc. 16 at 12). But the Board's burden is

"exceedingly light" with respect to this prong of the *McDonnell Douglas* analysis, and Hetzel

has not pointed to any authority to support her contention that the stated reasons are insufficient.

*See Nations Bank*, 53 F.3d at 1556; (*see also* Doc. 16 at 11). The court finds each of the above

reasons is a legitimate, non-discriminatory reason for the Board's decision.

### iii.  Plaintiff's showing of pretext

By presenting legitimate reasons for its decision, the Board has rebutted the presumption

of discriminatory intent. *Standard*, 161 F.3d at 1322. Hetzel now has the burden of providing

sufficient evidence to allow a reasonable fact finder to conclude that the reasons the Board gave

were not actually the reasons for its decision. *Id.* To prove pretext, Hetzel "must meet the

[Board's proffered reasons] 'head on and rebut [them]'" by showing "both that the reason[s]

[were] false and that discrimination was the real reason" for the Board's decision. *Holmes*, 591 Fed. Appx. at 743 (quoting *Chapman*, 229 F.3d at 1030; citing *Brooks*, 446 F.3d at 1163). Hetzel may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Regarding the Brent Elementary hiring, Plaintiff asserts that by undermining the credibility of Hollifield's stated reasons for recommending Leach over Hetzel, she will have adduced sufficient evidence to create a material question of fact. (Doc. 16 at 24). She points to conflicts between Hollifield's testimony and other portions of the record as evidence Hollifield's assertions are "unworthy of credence."

First, Hetzel emphasizes that she and Leach were treated differently during the year they shared the Assistant Principal position in that Leach was given a better office and a nameplate. (Doc. 16 at 25). The record reveals there were not two offices which had previously been designated as "Assistant Principal" offices; therefore someone had to occupy a space which had not previously been designated as such. Hollifield's stated reason for assigning the offices as she did is that the Assistant Principal's office housed the computer server used for the lunch program and Leach was responsible for that program as part of his duties. (Doc. 17-1 at 6). Regarding the nameplate, Hetzel concedes a nameplate was ordered for her, and the school ordered her a new desk for her office. (Doc. 15-1 at 26). Nothing in this testimony demonstrates a contradiction or inconsistency in Hollifield's testimony so great it would require the court to deem her stated reasons for hiring Leach to be unworthy of belief.

14

Next, Plaintiff points out that Hollifield testified she relied on information in the faculty survey responses that were mentioned several times. (Doc. 16 at 25). Because several survey responses indicated a belief on the part of certain faculty members that a male role model would be beneficial in a leadership position at the school, where all other administrators were female, Hetzel urges Hollifield must have made her decision on the basis of gender. Hollifield did send out a survey to gauge teachers' feelings about the split position, and some of the responses indicated a preference for a male to occupy the open leadership position at the school. (*See generally* Doc. 16-9). For example, the following excerpts were drawn from the survey responses:

(1) I really believe that a male role model would greatly enhance our schools [*sic*] best interest. Many of our students do not have a male role model to look up too [*sic*] and immolate [*sic*] and I believe this would help meet some of our students need [*sic*]. (Doc. 16-9 at 3).

(2) I think that the students that we have need a male authority figure in our school. (Doc. 16-9 at 9).

(3) Only have one assistant principal. Jason Leach is the best choice for the position. He has performed so well in this position and deserves the job. Also, a mostly female faculty, I feel it is very important to have a male in this position. (Doc. 16-9 at 14).

(4) I think our school, students, teachers and parents need only ONE assistant principal next year. I also feel that it needs to be a positive male role model for these kids. (Doc. 16-9 at 19).

(5) I believe that one should be chosen. The students require male leadership and I feel that Mr. Leach is a positive role model for the students. No offense should be taken towards Mrs. Hetzel but students of your socio-economic backgrounds [*sic*] need a male role model. (Doc. 16-9 at 24).

(6) I feel that it is extremely important to have a male presence in that position. (Doc. 16-9 at 26).

Plaintiff contends that "[o]f the approximately forty-one surveys returned to Hollifield by her staff, eleven of the anonymous responses specifically favored Leach as the next solo assistant principal, and in the eight of those which gave a reason for that choice, it was his gender each

time." (Doc. 16 at 10). But the survey excerpts themselves were not as clear-cut as Plaintiff would have the court understand. Hetzel testified that by her count, eleven responses explicitly favored consolidating the position and awarding it to Mr. Leach. (Doc. 16-4 at 22). Of those eleven responses advocating for Leach, eight recommended him on the basis of his gender. (*Id.*) ("[T]he ones that did mention him mentioned him because he was male."). The court notes many of the responses made no comment at all about the assistant principal position, choosing instead to focus on other subjects such as discipline, bullying, and the need to provide assistance for the overworked janitor. (*See, e.g.,* Doc. 16-9 at 4, 5, 10). Other responses did state it would be best to consolidate the position but do not suggest a preference. (Doc. 16-9 at 11) ("I mean you never know who to go to and one or the other think they are in more control."). Some examples offered by Hetzel are less stark when considered in their entirety. For example, the response found quoted above as item (2), says the following:

> I really like Mrs. Hetzel and Mr. Leach. I think that they both handle their specific responsibilities very well; but, I have to say that I have been much more impressed with the way that Mr. Leach has handled things. He keeps his composure, solves problems, takes initiative to take care of things, and has been very helpful when matters of discipline are involved. I think that he trusts us (teachers) and does not micromanage us. I think that the students that we have need a male authority figure in our school. Honestly, I wish that Mrs. Hetzel had a position at the Board of Education as a grant writer. That is a phenomenal gift that she has that I wish our school system could tap into. I wish that our full time assistant principal next year would be Mr. Leach.

(Doc. 16-9 at 9).

Hollifield did say, with regard to the surveys and her reliance on their contents, "If I saw it over and over, then I – then I looked at it and paid closer attention to it." (Doc. 16-3 at 29). "Paying closer attention" to the opinions of others is not the same as adopting those opinions as one's rationale for taking action. Furthermore, the record makes clear this comment was not

about the gender-based content of the responses at all. Hollifield was asked about the decision to consolidate the split position, and it is the repeated survey comments on *that* subject she was discussing in her deposition testimony. (*Id.*). In order for the survey responses to constitute direct evidence of gender bias in the decision-making process, the court would have to draw an unsupported inference that Hollifield exclusively relied on comments about gender in making her choices.  No evidence supports such a conclusion.

Third, Hetzel urges the court to find Hollifield's stated reasons for choosing Leach to be "unworthy of belief" because Hollifield claims she was told to conduct the teacher survey when in fact she was not. (Doc. 16 at 25). Again, Plaintiff is stretching the testimony. Hollifield said she conducted the survey at Blake's request and he wanted the responses. (Doc. 16-3 at 22). Blake did not recall instructing Hollifield to send out the "particular document" she used, but he also pointed out that he encourages administrators to seek feedback. As he said, "they are always encouraged to do survey[s], they get feedback on problems, SurveyMonkey, and things like that to get the gist of what's going on."  (Doc. 15-6 at 10).

In terms of how to handle the staffing situation at Brent Elementary, Blake said, "I told Hollifield that the community has displayed – expressed – some concern about the split principal position. She needs to take that into consideration and look at if it was working out, if there needed to be changes or modifications." (*Id.*). The court agrees the testimony contradicts Hollifield's assertion that Blake instructed her to conduct a survey specifically on this occasion. But it is clear he encouraged surveys generally and instructed her to collect feedback on the specific topics addressed in the survey she sent out. The court sees no incoherence in the testimony on this issue.

Finally, Plaintiff states Hollifield contradicted herself by claiming to have been unaware of Hetzel's disability since she later stated she understood Hetzel had a learning disability as a child. (*Id.*). Hollifield has readily acknowledged she sat in at least one meeting in which Hetzel discussed having had a learning disability as a child. (Doc. 16-3 at 25). But Hollifield states she was unclear about the nature of the disability and, in any event, Hetzel's reason for discussing it in the first place was to emphasize it was a challenge she had overcome.  (*Id.*).

Plaintiff has failed to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Rioux*, 520 F.3d at 1275. She has not attacked Leach's qualifications head on, and she fails to demonstrate fatal inconsistencies in the testimony.

### b.  West Blocton High School

#### i.  Prima facie case

Plaintiff complains she was discriminated against when the Board hired David Steele, a younger male without a disability, to fill the position of Assistant Principal at West Blocton High School. (Doc. 1 at ¶ 25).[4] For the same reasons discussed above, Plaintiff has satisfied the first element of the prima facie case analysis by showing she is a member of the protected classes in question.

---

[4] Count III of the complaint only refers to a single "Assistant Principal" position as the basis for Plaintiff's ADEA claim. (Doc. 1 at ¶¶ 37-41). Because Hetzel applied for several Assistant Principal positions, it is unclear which position is the basis of her claim for age discrimination. But elsewhere in the complaint, she alleges the age of both Jason Leach (the incumbent in the Brent Elementary Assistant Principal hiring process) and David Steele (the incumbent at West Blocton). (Doc. 1 at ¶¶ 15, 25). Because the parties have offered evidence relating to both positions and have argued both, the court will address the merits of Plaintiff's claim as to both positions.

Defendant attempts to defeat Plaintiff's claim by stating she has failed to establish the second element of a prima facie case – that she was qualified for the position. The record is unequivocal that the Principal at West Blocton, Terry Lawley, discussed the opening with the superintendent, Greg Blake, before posting the opening; they agreed that whoever was hired would have to be able to teach at the secondary level and should be qualified to do so. (Doc. 15-2 at 13-14). The Board asserts Hetzel's application to be the Assistant Principal at West Blocton High School was rejected out of hand because it was clear from the face of her application she was not qualified to hold the position.  (Doc. 15 at ¶¶ 74, 76-77).

The Board says Hetzel had no secondary teaching experience, while Hetzel asserts she did. (Doc. 16-1 at 5; Doc. 15-7 at ¶ 78) ("Because Plaintiff did not have any secondary teaching experience, she was eliminated from consideration without an interview."). The parties agree Hetzel was certified to teach secondary education. Certification *or* experience is all that Lawley claims to have required. (Doc. 15-2 at 13) ("Mr. Blake told me that for funding reasons I needed to consider hiring a person who would be qualified to teach at the secondary level."); (*Id.* at 14) ("I would have eliminated any applicant who did not have proper administrative certification or secondary teaching experience.").

According to Lawley, he rejected her application out of hand, as he did with dozens of others, because her application did not state she had secondary teaching experience. Hetzel asserts she had secondary teaching experience based on a position she held in Hale County in 1996-1997. (Doc. 16-1 at 5). The court notes Hetzel's application, in which she lists the Hale County position – not under "teaching experience" but elsewhere under "general experience" – and it in no way indicates that job was a secondary level educational position. (Doc. 15-2 at 47-59).  In the position she refers to, Hetzel worked for the Juvenile Detention Center in Hale

County.  She described this in her deposition testimony as a "high school setting," which was supported by the HERO Foundation and overseen by a local judge. (Doc. 16-1 at 5). When asked whether that position was part of the public school system, Hetzel responded, "[w]ell, yes, my check did come from HERO.  It was grant money from HERO, so yes, I guess I was not technically employed by Hale County."  (*Id.* at 6).

For purposes of Hetzel's establishment of a prima facie case, the court finds she was qualified to occupy the position of Assistant Principal at West Blocton High School according to the Board's own description of the position.

### ii.  Defendant's stated reasons for its decision

Hetzel has established she was qualified for the position of Assistant Principal at West Blocton. But the Board articulated a legitimate, non-discriminatory reason for its decision in that Lawley only considered applications which indicated secondary level teaching experience. Hetzel was qualified for the job in the sense that she met the Board's stated minimum qualifications of being certified at the secondary level or having experience as a secondary school teacher. The parties do not dispute whether Hetzel was certified, but her experience as a secondary school teacher was not in any way clear from her application. Although she has shown through testimony that a position she held in 1996-97 involved teaching experience at the secondary level, nothing in her application indicates this was the case. Therefore, Lawley had a legitimate reason for discarding her application – one of over sixty applications for the job in question – as he screened them for relevant experience.

In addition to the legitimate reason cited for eliminating Hetzel as a candidate for the West Blocton Assistant Principal position, it is clear the Board had legitimate reasons for selecting David Steele.  Lawley provided a list of seven finalists who were interviewed.  (Doc.

15-2 at 14). Of the interviewed finalists, two were over forty years of age, and five were under forty years of age. (*Id.*). Five were male, and two were female. (*Id.*). Lawley states he and another administrator narrowed the list of seven finalists to two candidates; Lawley selected Steele because in addition to his secondary education experience and scores in the personal interview, he was a local member of the community and had children in the local school system. (Doc. 15-2 at 15). These are legitimate, non-discriminatory reasons for the Board's decision to hire Steele—reasons which would have applied even if the Board had not eliminated Hetzel's application for a legitimate (though perhaps mistaken) reason.

### iii.   Plaintiff's Showing Of Pretext

Plaintiff's argument regarding pretext contains no discussion of the West Blocton Assistant Principal hiring process. (Doc. 16 at 22-26). She makes no mention of the Board's rationale for hiring Steele and offers no basis for finding those stated reasons were pretextual. The Board made note of this in its reply brief. (Doc. 17 at 8). No sur-reply was filed by Plaintiff, and no request has been made for leave to amend her pleadings on this issue. Plaintiff asserts she was qualified for the position, which the court has accepted at face value. But since the Board offers a legitimate reason for its decision, the burden shifts to Plaintiff to show the offered reasons were false and that discrimination was the real reason she was not hired. *Chapman*, 229 F.3d at 1030. Having offered nothing whatsoever in rebuttal on that point, the court finds Plaintiff has failed to meet her burden and summary judgment is due to be granted in favor of the Board as to her claims of discrimination in the West Blocton High School hiring process.

### B.  Retaliation

Plaintiff does not specify, either in her complaint or in her brief opposing the motion for summary judgment, what law she travels under in claiming retaliation. (Doc. 1 at 7-8) (charging simply "retaliatory discrimination in violation of federal law"). Where a plaintiff has been refused a promotion, the Eleventh Circuit recognizes a cause of action for a retaliatory hostile work environment under Title VII, the ADA, and the ADEA; the elements under each are the same. *See Gowski v. Peake*, 682 F.3d 1299, 1311-1312 (11th Cir. 2012) (Title VII); *Rocky v. Columbia Lawnwood Regional Medical Center*, 54 F. Supp. 2d 1159, 1169 (11th Cir. 1999) (citing *Standard*, 161 F.3d at 1328) (ADA); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (ADEA). To prevail, Hetzel must prove each of the following elements: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. The same burden-shifting analysis applies to retaliation claims as it does to other discriminatory conduct. *See Ellison v. City of Birmingham*, 2016 WL 1554927 (N.D. Ala., April 18, 2016).

Plaintiff claims she was retaliated against in two ways: first, she suffered a hostile work environment at Brent Elementary after she was passed over for the position of Assistant Principal in favor of Jason Leach. (Doc. 16 at 26-27). Next, she claims she was subject to retaliation when the Board refused to hire her at West Blocton High School and later as a special education coordinator at Bibb County High School.  (*Id.* at 25-27).

### 1.  Hostile work environment at Brent

Plaintiff claims she was subject to a hostile (or "toxic") work environment at Brent Elementary after disclosing to Dr. James Gray, a board-level employee, that she intended to file a

charge of discrimination. (Doc. 16 at 26). She bases this charge on three allegations. First, she says she was removed from all the committees on which she previously served. (*Id.*). Next, she says she was stripped of her position as "Grade Level Chair" for special education. (*Id.*). Third, Hetzel inserts a nineteen-line block quote excerpted from her own deposition to establish her general discomfort at Brent because of the alleged hostility.  (*Id.* at 27).

Plaintiff has established she announced to Gray in the summer of 2012 that she was contemplating a lawsuit or EEOC charge. (Doc. 16-4 at 12). That EEOC charge was filed in December 2012, meaning that the conversation with Gray is the only basis upon which her Brent Elementary retaliation claims can rest. Hetzel has offered no evidence that her conversation with Gray  was known to anyone else. She does not allege he told Hollifield that Hetzel  had threatened to file a charge. Therefore, she has not established that any of the conduct she complains of was connected to that conversation.

With respect to her committee assignments, the Board has explained Hetzel was removed from those positions because she was no longer an administrator but was reinstated to other committees. (Doc. 17-1 at 7). Regarding the second claim, they respond that the "Grade Level Chair" position is an IT designation which is not under the control of Hollifield, and as such, her removal from that position cannot be causally connected to the alleged hostility of Hollifield toward Hetzel. (Doc. 17 at 11). Finally, the Board asserts the deposition testimony from Hetzel, which serves as the third factual basis for retaliation at Brent Elementary, fails to prove her claim on this point.  (*Id.*).

The statement from Hetzel's deposition is simply a report of Plaintiff's own feelings in the aftermath of the decision to hire Leach as Assistant Principal. (*See* Doc. 16 at 26). It states almost no specific conduct on the part of anyone.  (*Id.*).  The closest Plaintiff comes to alleging

specific retaliatory conduct on the part of the Board is to say, "there were some things that happened the first couple of days of that school year that basically communicated to the staff very clearly that I, in some way, was damaged goods." (*Id.*). If Plaintiff is referring to the committee assignments, the Board has offered a legitimate, non-discriminatory, non-retaliatory explanation which Plaintiff has failed to rebut or show is pretextual. Beyond that, the deposition testimony Plaintiff relies on is rambling, vague, and reports almost nothing except her own sense of disappointment, woundedness, and resentment at having been denied the promotion  she sought. It suggests Hetzel felt her colleagues had been given the impression she was "damaged goods," but it does not state anything specific that other teachers, or anyone at the school, did to act on this perceived hostility. Further, the contents of this testimony are not explained or argued. Without more, a reasonable factfinder would be unable to conclude from this statement that Plaintiff was subjected to a hostile work environment in retaliation for protected conduct.

Plaintiff has failed to rebut the Board's legitimate reasons for its decisions at Brent or to demonstrate the allegedly hostile conduct was connected to her protected activity of informing Gray she intended to file a charge of discrimination. Therefore, the court finds Hetzel is unable to meet her burden of establishing the alleged conduct amounts to a hostile work environment or is causally connected to her conversation at all.

### 2. Retaliation in the Board's hiring decisions

#### a. West Blocton High School

Plaintiff has established she filed her first EEOC complaint in December 2012 and was denied the Assistant Principal position at West Blocton High School for which she applied in June 2013, when David Steele was hired instead. It is undisputed that Terry Lawley made the decision to disregard Plaintiff's application for the job at West Blocton.  Plaintiff has offered no

evidence to show Lawley knew an EEOC charge had been filed at the time he eliminated Plaintiff as a candidate for Assistant Principal. Plaintiff asserts it is a "reasonable inference" Lawley knew about the EEOC charges since Hetzel told others she was considering filing a charge. (Doc. 16 at 28). The court does not find it reasonable to make such an inference. Plaintiff told Gray she was upset and was considering filing a charge when they spoke in the summer of 2012. Plaintiff filed her EEOC complaint in December 2012. Lawley testified he had no knowledge about the charge. Plaintiff has offered no evidence to show otherwise, stating only that "[w]hile the particulars were not discussed" when she spoke with James Gray and Alesha Judd, "the fact of the matter was common knowledge." (*Id.*).

Having offered no actual proof to counter Lawley's testimony, Plaintiff has failed to show he had knowledge of her protected activity. In fact, Hetzel is unable to show Lawley or any other decision-maker with respect to this position knew she had filed an EEOC claim. Plaintiff has failed to establish a link between the adverse employment decision and her protected activity. Thus, her retaliation claim fails as to the employment decision at West Blocton High School.

### b. Bibb County High School

#### i. Assistant Principal [5]

---

[5] Plaintiff's complaint charges retaliation in the Board's failure to hire Hetzel as "Principal" at Bibb County High School, but she did not apply for this position. (Doc. 1 at ¶ 45). Plaintiff insists this was a scrivener's error and requested leave to amend her complaint to allege the Board's failure to hire her as Assistant Principal at Bibb County High School. (*See* Doc. 16 at 26; Doc 16-4 at 8). But as the record makes clear, the complaint was filed in Febraury, 2014, and the Assistant Principal position was not open or filled until summer of 2014. (Docs. 1, 16-5 at 16). It cannot be that Plaintiff intended to refer to the Assistant Principal position even though her complaint says "Principal." Nonetheless, the court notes the parties were on notice of Plaintiff's assertion, and Defendant has sufficiently responded to the issues for the court to address the merits of this claim. (*See* Doc. 17 at 15-16 (arguing the legitimate reasons for the Board's decision not to hire Hetzel as Assistant Principal at Bibb County High School); Doc. 15 at ¶¶ 103-108 (providing sufficient information, taken with the evidence submitted, for the court

Plaintiff applied to be Assistant Principal at Bibb County High School for the 2013-2014 school year. (Doc. 16-4 at 8). She was not selected; John Hooper was hired instead. Plaintiff argues she was more qualified that Hooper to hold the position and that members of the Board were aware she filed an EEOC complaint. But she has failed to establish any causal link between this adverse employment decision and her protected activity. Even if Hetzel had presented a prima facie case of retaliation in the hiring of Hooper as Assistant Principal at Bibb County High School, the Board has offered a legitimate reason for choosing him, which Plaintiff has failed to rebut.

The Board states Hooper was hired because he was more experienced as a high school teacher and had completed a leadership program sponsored by the State Department of Education "designed to prepare teachers for administrative positions in schools by giving them hands on administrative experience while under the supervision of an administrator in a school." (Doc. 15 at ¶ 108).  These are legitimate, non-retaliatory reasons for hiring Hooper over Hetzel.

Plaintiff argues she was qualified since she had "bolstered her already impressive resume with a year of experience as assistant principal," referring to the Brent Elementary split position she shared with Jason Leach, by the time she applied for the Bibb County High School position. (Doc. 16 at 28). Plaintiff asserts that because "she has better qualifications for the position" and members of the committee which screened applicants must have been aware of the EEOC complaints, she has created a question of fact regarding retaliation. But the record does not support Hetzel's claim that she was more qualified. Even if it did, the Board's burden with regard to showing a legitimate reason for its decision is "exceedingly light." *Nations Bank*, 53

---

to adjudicate the claim)).  Therefore, the court will **GRANT** Plaintiff's request to amend her pleadings and address the merits of the claim.

F.3d at 1556. And in order to demonstrate pretext, which Plaintiff does not argue in her opposition brief, she would have to show "the disparities between the successful applicant's and [her] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgement, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d at 1163 (quoting *Cooper v. Southern Company*, 390 F.3d 695, 732 (11th Cir. 2004)). Because she fails to do this, summary judgment is due to be entered in favor of the Board on Plaintiff's retaliation claim for failure to hire her as Assistant Principal at Bibb County High School.

### ii.   Interim Special Education Coordinator

Plaintiff complains she was retaliated against when the Board appointed Evon Blake to be Interim Special Education Coordinator at Bibb County High School and later hired Ms. Blake as the permanent Special Education Coordinator. Plaintiff has offered nothing establish any causal connection between the Board's decision for this position and Plaintiff's protected activity. Even if she were able to show a prima facie case with regard to this claim, the Board has offered legitimate reasons for hiring Blake. (Doc. 15-7 at 28-29). Blake was able to fill two positions: the job she already held as a homebound teacher, as well as the interim special education position. (Doc. 15-6 at 61-62). Blake also had more experience than Hetzel as an educator. (Doc. 15-6 at 67, ¶ 6). Plaintiff has not responded in any way to rebut Defendant's legitimate, non-discriminatory reasons. Therefore, she has failed to show the Board's asserted reasons for its decision were pretextual. Thus, judgment is due to be entered in favor of the Board on this claim.

## V.      CONCLUSION

The defendant has offered legitimate, non-discriminatory reasons for its hiring decisions at Brent Elementary and West Blocton High School, which the plaintiff has failed to rebut. The plaintiff has also failed to rebut the Board's legitimate reasons for the hiring decisions on which she bases her claims of retaliation. Finally, she has failed to meet her burden of demonstrating a hostile work environment at Brent Elementary. Therefore, the Board's motion for summary judgment will be granted in favor of Defendant as to all claims.  A separate order will be entered.

DONE this 30th day of September, 2016.


STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE